IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
April 7, 2026

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**HAULIN' JACK SHIPPING
SERVICE, INC.,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-378**          (JCN: 2026000440)

**THOMAS JACKSON,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Haulin' Jack Shipping Service, Inc. ("Haulin' Jack") appeals the September 4, 2025, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order, held Respondent Thomas Jackson's claim compensable for a sprain of the ligaments of the cervical spine, and remanded this case to the claim administrator to determine the compensability of cervical radiculopathy and Mr. Jackson's entitlement to temporary total disability ("TTD") benefits. Mr. Jackson filed a response.[1] Haulin' Jack did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Prior to the incident at issue, Mr. Jackson suffered injuries to his neck and spine, and he was seen by Scott R. Brown, D.O., from November 11, 2020, through October 16, 2024. On November 11, 2020, Mr. Jackson presented for a follow-up appointment following hospitalization and a stay at an inpatient rehabilitation facility related to a cervical spine epidural abscess. The visit notes state that Mr. Jackson underwent a C5-T1 laminectomy and decompression surgery which was performed on September 7, 2020; that he had postoperative complications which led to septic shock; but that his radicular symptoms had improved after surgery. Dr. Brown assessed Mr. Jackson with an abscess in the epidural space of the cervical spine, cervical radiculopathy at C5, physical deconditioning, and chronic neck pain. On April 25, 2022, Mr. Jackson was seen for

---

[1] Haulin' Jack is represented by Toni J. Williams, Esq. Mr. Jackson is represented by Christopher J. Wallace, Esq.

another follow-up appointment, and Dr. Brown noted that Mr. Jackson's cervical radiculopathy had resolved, and he was planning to return to employment. Mr. Jackson was seen again by Dr. Brown for follow-up appointments from June of 2023 to October of 2024, and he reported that his cervical radiculopathy was resolved and he no longer suffered from neck pain, numbness, tingling, or weakness. On December 14, 2023, Mr. Jackson was seen by David Weber, M.D., and Mr. Jackson reported his back pain was stable but was exacerbated by his job as a truck driver. Dr. Weber noted Mr. Jackson's past surgical history and resultant infection and also assessed Mr. Jackson with right elbow bursitis. Dr. Weber prescribed a refill of Keflex.

Turning to the incident leading to the claim at issue, Mr. Jackson was driving a tractor trailer for Haulin' Jack on April 30, 2025, when he was involved in a rear-end collision caused by another tractor trailer. On that same date, the Marion County Sheriff's Office issued an accident report stating police officers responded to a rear-end crash involving two tractor trailers and that the dispatcher was advised that one driver was complaining of neck pain. The report further stated Mr. Jackson had to be extracted from his vehicle with a backboard, which is used to immobilize a patient to minimize the risk of aggravating a neck or spinal cord injury. Following the accident, Mr. Jackson was transported by emergency medical services to Fairmont Medical Center's emergency department. The medical records from the emergency department noted that Mr. Jackson had tenderness with palpation of the cervical spine and the lower back, and a CT of the brain and the cervical spine showed chronic changes but no acute fractures or dislocations.

On May 13, 2025, Mr. Jackson was seen by Gerard Werries, M.D., who diagnosed Mr. Jackson with radiculopathy of the cervical region and a cervical sprain. Dr. Werries also ordered physical therapy, a cervical MRI, and lab work. In addition, Dr. Werries took Mr. Jackson off work, with no estimated date of return because of his cervical radiculopathy. On May 28, 2025, Mr. Jackson underwent a cervical MRI, which showed post-surgical changes with solid fusion of the bodies of C5, C6, and C7, cervical kyphosis centered at the C6 level, upper cervical lordosis, central canal spinal stenosis at C3-4, but no fractures or focal disc protrusion or extrusion.

Mr. Jackson attended physical therapy at Drayer Physical Therapy Institute from May 16, 2025, to June 9, 2025, for evaluation of his neck following the motor vehicle accident. At his initial visit on May 16, 2025, Mr. Jackson was diagnosed with cervicalgia, stiffness of an unspecified joint, weakness, and radiculopathy of the cervical region and reported moderate to severe levels of pain, moderate to severe loss of motion limited by pain, and moderate to severe stiffness and weakness. He stated that his symptoms were constant, aggravated by movement, and eased when sitting upright, not moving, and taking ibuprofen. He was assessed with cervical pain secondary to whiplash with cervical radiculopathy.

On June 4, 2025, the claim administrator denied Mr. Jackson's claim for workers' compensation benefits. Specifically, the order found radiculopathy of the cervical region and a sprain of the ligaments of the cervical spine were not compensable. On June 9, 2025, Mr. Jackson again attended physical therapy and reported improvements in his cervical range of motion, improvements in his ability to walk, and decreased levels of pain. The physical therapist further stated that Mr. Jackson was discharged from physical therapy due to the denial of his workers' compensation claim but more physical therapy was needed to address his continued limitations due to pain, range of motion, and strength. On June 24, 2025, Mr. Jackson signed an Employees' and Physicians' Report of Occupational Injury or Disease ("Report of Injury") stating he injured his upper back and neck on April 30, 2025, when a tractor trailer smashed into his trailer from behind.[2] In the physician's section, Dr. Werries diagnosed Mr. Jackson with radiculopathy of the cervical spine and a sprain of the cervical spine as a result of an occupational injury.

On July 15, 2025, Mr. Jackson was deposed and testified that he was employed by Haulin' Jack on April 7, 2025, as an eighteen-wheeler truck driver. He stated he had prior neck surgery on September 6, 2020, due to a staph infection but never had any problems with his neck or back prior to this surgery. Before the motor vehicle accident, he testified that he last sought treatment for his neck in early 2022 and was working without restrictions. He further stated that he was unable to get out of the cab of his truck after the accident, and he was extracted from his vehicle. Mr. Jackson testified that he complained to emergency medical services about neck pain, was placed in a cervical collar, and was placed on a backboard before he was taken to the emergency department.

On August 6, 2025, D. Kelly Agnew, M.D., performed an independent medical examination at the request of the claim administrator and opined that he was unable to state with a reasonable degree of medical certainty that Mr. Jackson suffered any identifiable injury as a result of the motor vehicle accident. Dr. Agnew noted Mr. Jackson's significant past medical history involving his cervical spine and stated that there was no evidence of any lingering injury based on the physical examination. He further stated that there were no physical findings of an injury immediately after the accident or in any imaging studies. On August 8, 2025, Matt Heinichen, a safety and compliance manager employed by Haulin' Jack, signed an affidavit stating Mr. Jackson did not report any injuries to Haulin' Jack immediately after the motor vehicle accident. Mr. Heinichen stated that he contacted Mr. Jackson on May 5, 2025, to inquire about Mr. Jackson's ability to return to work, and Mr. Jackson stated the accident had exacerbated a preexisting medical condition. Mr. Heinichen stated that the back of Mr. Jackson's truck was barely damaged as a result of the accident, and the other truck driver stated he was traveling approximately eighteen miles per hour at the time of the impact. Mr. Heinichen further stated that the point of

---

[2] It is unclear from the record why Mr. Jackson's Report of Injury was filed after the claim administrator entered an order denying his claim.

impact was approximately fifty feet from where Mr. Jackson was sitting in the cab of the truck and that Mr. Jackson's truck was able to be driven back to Haulin' Jack's premises because the damage was minor. Further, Mr. Heinichen advised that the camera system in the truck driven by Mr. Jackson was functioning properly every day prior to this accident, but it was intentionally disconnected on the date of the accident.

On September 4, 2025, the Board entered an order which reversed the claim administrator's June 4, 2025, order, held Mr. Jackson's claim compensable for a sprain of the ligaments of the cervical spine, and remanded this case to the claim administrator to determine the compensability of cervical radiculopathy and TTD benefits. It is from this order that Haulin' Jack now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Haulin' Jack asserts one assignment of error and argues the Board was clearly wrong in reversing the claim administrator's order because the evidence in the record does not support the Board's decision. Specifically, Haulin' Jack argues the Board failed to properly weigh the evidence or assess its relevance, credibility, materiality, and reliability. We disagree. "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *see also* W. Va. Code § 23-4-1(a) (2024).

Here, the Board relied on Mr. Jackson's documented complaints of neck pain at the scene of the motor vehicle accident as well as his deposition testimony, which stated the same. The Board also considered Mr. Jackson's prior spine injury and noted that he returned to full duty with his prior employer in 2022. The Board further found that the Fairmont Medical Center's emergency department medical records corroborated Mr. Jackson's statements because those records show Mr. Jackson was taken to the emergency department and provided a differential diagnosis of a cervical strain/sprain. The Board further relied on the Report of Injury signed by Dr. Werries, which diagnosed Mr. Jackson with a sprain of the cervical spine as a result of an occupational injury. The Board explicitly stated that it found Mr. Jackson's deposition testimony credible and the medical records persuasive. It further stated that Mr. Heinichen's affidavit was not as persuasive as Mr. Jackson's testimony, the Report of Injury, and the Fairmont Medical Center's emergency department medical records. Based on these facts, the Board held that this evidence established that Mr. Jackson suffered a compensable neck sprain as a result of his work-related motor vehicle accident. Contrary to Petitioner's assertions, this Court is not authorized to reweigh the evidence.

However, the Board found it was not clear whether Mr. Jackson's radiculopathy to the cervical spine was causally related to his compensable cervical sprain because his medical records document complaints of cervical radiculopathy prior to the injury. This determination was supported by the medical records detailing Mr. Jackson's 2020 neck surgery and associated complaints. The Board then remanded this case to the claim administrator to determine both the compensability of cervical radiculopathy and Mr. Jackson's entitlement to TTD benefits. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, holding Mr. Jackson's claim compensable for a sprain of the ligaments of the cervical spine, and remanding this case to the claim administrator to determine the compensability of cervical radiculopathy and TTD benefits.

Accordingly, we affirm the Board's September 4, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

5

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White